UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DARYL JACKSON,

     Petitioner,

v.                                Case No.  5:16cv301-LC-CJK

FLORIDA DEPARTMENT OF
CORRECTIONS SECRETARY,

     Respondent.
_____/

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 6).  Respondent filed an answer, providing relevant portions of the state court record.  (Doc. 18).  Petitioner replied.  (Doc. 20).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  Upon consideration, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief and that the petition should be denied.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

In March 2011, Preston Rice, the soon-to-be victim of manslaughter at petitioner's hands, allowed petitioner to stay in his home for a short time while petitioner "g[o]t [him]self on his feet."  (Doc. 18, Ex. B-4, pp. 33, 37-38, 72).[1]  Mr. Rice lived at 816 Massalina Drive in Panama City.  (*Id*., p .61).  The evening of March 22, 2011, petitioner and Mr. Rice got into an argument.  (*Id*., pp. 33-34).  Sherlette Franklin witnessed the incident and recounted the following facts at trial.  (*Id*.).  Mr. Rice was sitting on the couch in his living room when he and petitioner began quarrelling.  Petitioner was standing near the front door.  (*Id*., p. 34).  The argument escalated, and Mr. Rice ordered petitioner to get his clothes and leave his home.  (*Id*., p. 34).  Petitioner walked over to Rice and raised his fist, preparing to punch Rice in the face.  (*Id*., pp. 34-35).  Mr. Rice pulled a pocket-sized knife out of his pants pocket, unfolded the blade, closed it, and clipped the knife back onto his pants pocket.  (*Id*., pp. 35-36, 64).  Petitioner went outside.  (*Id*., p. 35).  Petitioner was "very mad" when he left – so mad that Ms. Franklin locked the door out of

---

[1] All references to exhibits are to those provided at Doc. 18.  Where a page of an exhibit bears more than one page number, the court cites the Bates Stamp number appearing at the bottom right corner of the page.

concern for Mr. Rice's safety. (*Id.*, pp. 35, 47). Petitioner returned 2 or 3 minutes later, knocked on the front door, and told Rice to let him inside so he could get his clothes. (*Id.*). Rice responded, "[Y]eah, man, I'm gonna let you in, and get your clothes and stuff, because I don't need no police at my house." (*Id.*). Rice opened the door and, without even looking at petitioner, turned to walk away. (*Id.*, p. 36). As Rice turned, petitioner entered the house with a long piece of landscape timber, raised it, and hit Mr. Rice in the head as hard as he could. (*Id.*, pp. 36, 48-49). Mr. Rice spun around "like a baseball" hit with a bat, then fell to the ground. (*Id.*). Mr. Rice's knife was still clipped to his right front pants pocket with the blade closed. (*Id.*, p. 63). Mr. Rice lay unconscious with blood "pouring" out of his head. (*Id.*). Rice urinated on himself, vomited and aspirated the gastric materials. (*Id.*, p. 130). Ms. Franklin told petitioner to call 911. (*Id.*, p. 36). Petitioner reported to the operator: "[T]his is Daryl Jackson, me and my friend, me and my roommate had an altercation at 8th Court or 7th Court, and I just hit him in the head with a log, and if he move, I'm gonna hit him again." (*Id.*, pp. 36-37).

Police and emergency medical personnel responded. Mr. Rice was transported to a local hospital. (*Id.*, pp. 63, 65). Rice had "very severe head trauma" – "bleeding on the brain, injury to the brain surface itself because of [the] blow",

"disruption of the brain tissue itself". (*Id*., pp. 122, 130). Although Rice received emergent surgery to relieve the pressure on his brain and prevent imminent death, (*id*., pp. 122, 126-28), he never regained consciousness and died in the hospital from complications of the brain injury. (*Id*., pp. 91, 121-30),

Petitioner, meanwhile, was transported to the police station within an hour of law enforcement's response to the scene. Officer Chris Taylor video-recorded petitioner being Mirandized, waiving his rights, and providing a sworn statement. (*Id*., pp. 68-90). Petitioner confessed, although he described the argument as spilling outside into the yard. Even according to petitioner's version, though, Rice walked away from petitioner, but petitioner followed him and hit him with the timber because Rice kept "running his mouth." (*Id*.). Recognizing early in the interview that he incriminated himself, petitioner spent the rest of the interview changing his story to attempt to justify hitting Rice. That became increasingly difficult as Officer Taylor confronted him with various facts, including Rice being back inside his home when he was hit, and Rice's knife being clipped to his pants pocket with the blade closed. (*Id*.). At trial, petitioner told yet another version of the events. (Doc. 18, Ex. B-5, pp. 144-59).

Petitioner was initially charged on April 25, 2011, with aggravated battery, but after Mr. Rice died on June 8, 2011, the State added a manslaughter charge. (Doc. B-1, p. 5 (information), p. 10 (amended information)).  The aggravated battery charge was dismissed.  (Ex. B-1, pp. 35-52 (defense motion to dismiss), Ex. B-2, pp. 171-72 (transcript of discussion preceding jury selection); Ex. A, p. 3, line 74 (docket entry reflecting dismissal of aggravated battery charge)).

Petitioner went to trial, and a jury found him guilty of manslaughter as charged with a special finding that he used a deadly weapon during commission of the offense.  (Ex. B-4, p. 275 (reading of verdict); Ex. B-2, pp. 136-37 (written verdict)). Petitioner was adjudicated guilty and sentenced to 22 years in prison.  (Ex. B-3 (sentencing transcript); Ex. B-1, pp. 146-50 (judgment and sentence)).  On February 18, 2013, the Florida First District Court of Appeal (First DCA) affirmed the judgment per curiam without opinion.  *Jackson v. State*, 107 So.3d 409 (Fla. 1st DCA 2013) (Table) (copy at Ex. E).

On July 12, 2013, petitioner filed a *pro se* petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel.  (Ex. H).  The First DCA denied relief on August 14, 2013, in a one-sentence opinion: "The petition

alleging ineffective assistance of appellate counsel is denied on the merits." *Jackson v. State*, 119 So. 3d 517 (Fla. 1st DCA 2013) (Table) (copy at Ex. I).

On January 27, 2014, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he amended. (Ex. J-2, pp. 181-216, 239-68). The state circuit court summarily denied Grounds 1, 2, 3, 5 and 7, ordered an evidentiary hearing on Grounds 4 and 6, and appointed counsel. (Ex. J-2, pp. 269 through Ex. J-4, p. 718). After hearing, (Ex. J-5), the circuit court denied relief on the remaining grounds. (Ex. J-4, pp. 728-31). The First DCA affirmed per curiam without opinion. *Jackson v. State*, 203 So. 3d 159 (Fla. 1st DCA 2016) (Table) (copy at Ex. N). The mandate issued November 7, 2016. (Ex. Q).

Petitioner filed his original federal habeas petition on October 31, 2016. (Doc. 1, p. 1). Petitioner's amended petition raises two claims, both involving ineffective assistance of counsel. (Doc. 6).

## SECTION 2254 STANDARD OF REVIEW

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*,

135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a

substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)). The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the

first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

DISCUSSION

Ground One          <u>Appellate Counsel Was Ineffective for Failing to Raise on Direct Appeal the Trial Court's Fundamental Error in Instructing the Jury on Manslaughter. (Doc. 6, Attach. One).</u>

Petitioner faults appellate counsel for failing to challenge the jury instruction on manslaughter. The trial judge gave this instruction (in relevant part):

> To prove the crime of Manslaughter, the State must prove the following two elements beyond a reasonable doubt:
>
> 1.    PRESTON RICE is dead.
>
> 2.    DARYL ALEXANDER JACKSON <u>intentionally committed an act or acts that caused the death</u> of PRESTON RICE.

> The defendant cannot be guilty of manslaughter by committing a merely negligent act or if the killing was either justifiable or excusable homicide:

> Each of us has a duty to act reasonably toward others.  If there is a violation of that duty, without any conscious intention to harm, that violation is negligence.

> In order to convict of manslaughter by act, it is not necessary for the State to prove that the defendant had an intent to cause death, only an intent to commit an act that was not merely negligent, justified, or excusable[,] and which caused death.

(Doc. 18, Ex. B-1, p. 114 (written instruction) (emphasis added); Ex. B-5, p. 257 (verbal instruction)).   Petitioner believes the emphasized portion erroneously required the jury to find that he intended to kill Mr. Rice and that it "put premeditation upon the minds of the jurors in a prejudicial light toward petitioner. . . ." (Doc. 6, p. 12 in ECF).  Petitioner asserts that the "inclusion of the erroneous language deprives the jury of 'its inherent pardoning power' by improperly sending its analysis astray."  (*Id*., p. 14 in ECF).  Petitioner faults counsel for failing to challenge the instruction.  (*Id*., pp. 12, 14-17 in ECF).

The parties agree that petitioner presented his IAAC claim to the First DCA in his state habeas petition alleging ineffective assistance of appellate counsel, and that the court rejected the claim on the merits.  (Doc. 6, p. 5; Doc. 18, pp. 3, 6-7; *see also* Ex. H (petitioner's state habeas petition)).  Respondent asserts that petitioner is

not entitled to federal habeas relief because he has not shown that the First DCA's rejection of the claim was contrary to, or an unreasonable application of, clearly established Federal law. (Doc. 18, pp. 12, 19-20, 21-26).

A.    Clearly Established Federal Law

An ineffective assistance of appellate counsel claim is considered under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that *Strickland* is the proper standard for evaluating a claim that appellate counsel was ineffective); *Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* standard to claim of attorney error on appeal). The *Strickland* standard requires petitioner to show (1) appellate counsel's performance was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's unreasonable performance, petitioner would have prevailed on his appeal. *Smith*, 528 U.S. at 285-86.

B.    Section 2254 Review of State Court's Decision

The First DCA's summary rejection of the claim warrants deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because the

First DCA's opinion offers no reasoned explanation and there is no lower court opinion to "look through" to, this court employs the test articulated in *Richter*. The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

The First DCA's decision could have been, and likely was, based on the theory that petitioner's proposed challenge to the jury instruction was grounded on the faulty premise that the instruction was akin to the instruction struck down in *State v. Montgomery*, 39 So. 3d 252 (Fla. 2010). (Doc. 6, p. 14 in ECF (relying on *Montgomery*; *De La Hoz v. Crews*, 123 So. 3d 101 (Fla. 3d DCA 2013); and *Haygood v. State*, 109 So. 3d 735 (Fla. 2013)). Florida defines manslaughter-by-act as "[t]he killing of a human being by the act . . . of another, without lawful justification . . . in cases in which such killing shall not be excusable homicide or

murder." Fla. Stat. § 782.07(1) (2011). In *Montgomery, supra*, the defendant was indicted and tried for first-degree murder and ultimately convicted of second-degree murder after the jury was erroneously instructed on the lesser included offense of manslaughter. *Id*. at 258. The manslaughter-by-act instruction given in Montgomery's trial included the language, "intentionally caused the death of [the victim]". *Montgomery*, 39 So. 3d at 256 (emphasis added). The Florida Supreme Court held that this instruction was error because the manslaughter-by-act statute "does not impose a requirement that the defendant intend to kill the victim. Instead, it plainly provides that where one commits an act that results in death, and such an act is not lawfully justified or excusable, it is manslaughter." *Id*. at 256 (emphases added). The court determined that the language in Mr. Montgomery's instruction erroneously required the jury to find that he intended to kill the victim in order to find him guilty of manslaughter-by-act. *Id*. at 257. The court further held that because Montgomery's conviction for second-degree murder was only one step removed from the necessarily lesser included offense of manslaughter, the giving of the erroneous instruction was fundamental error and reversible per se. Similarly, in *Haygood* and *De La Hoz*, the defendants were also convicted of second-degree murder after the erroneous pre-*Montgomery* manslaughter-by-act instruction was

given as a necessarily lesser included offense.  *Haygood*, 109 So. 3d at 737-38; *De La Hoz*, 123 So. 3d at 103.  Their convictions were reversed.

In petitioner's case, however, manslaughter-by-act was the charged offense, not a lesser included offense.  Further and even more significant, the trial judge did not give the erroneous pre-*Montgomery* manslaughter-by-act instruction.  The judge gave the <u>amended</u> standard jury instruction adopted <u>after</u> *Montgomery*, which correctly stated the elements of manslaughter-by-act, consistent with *Montgomery*.  *See In re Amendments to Standard Jury Instructions in Criminal Case – Instruction 7.7*, 75 So.3d 210, 211 (Fla. 2011).  The instruction correctly required the jury to find only that petitioner <u>intentionally committed the act</u> that caused Mr. Rice's death (i.e., intended to hit him with the timber), not that he intended to kill him or cause his death.

As the jury instruction was an accurate statement of the law and was not erroneous, appellate counsel was not ineffective for failing to challenge the instruction (and, by extension, there was no trial court error or ineffectiveness of trial counsel).  *See Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1311 (11th Cir. 2008) ("Shere's appellate counsel did not have a meritorious issue to raise on appeal, so his failure to address the issue did not constitute deficient performance.");

*Freeman v. Attorney Gen., Fla*., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").[3]  Petitioner is not entitled to federal habeas relief on Ground One.

        <u>Ground Two</u>        <u>Trial Counsel Was Ineffective for Failing to File a Motion to Dismiss the Manslaughter Charge.  (Doc. 6, p. 13 in ECF).</u>

Petitioner claims trial counsel was ineffective for failing to assert petitioner's entitlement to "Stand Your Ground" immunity in a pre-trial motion to dismiss. (Doc. 6, pp. 13, 17-21 in ECF).  "Stand Your Ground" immunity refers to Section 776.032(1), Florida Statutes, which provides "that a person who uses force as permitted in section 776.013 is justified in using such force and is immune from criminal prosecution as well as civil action for the use of such force."  *Peterson v. State*, 983 So. 2d 27, 29 (Fla 1st DCA 2008) (*citing* Fla. Stat. § 776.032).  Section 776.013, Florida Statutes (2011), in turn, states:

---

[3] Respondent notes that petitioner's appellate counsel, Richard M. Summa also represented defendant Montgomery before the Florida Supreme Court in *State v. Montgomery*, 39 So. 3d 252 (Fla. 2010).  Given appellate counsel's intimate familiarity with *Montgomery*, he was uniquely qualified to recognize the inapplicability of the Supreme Court's holding in *Montgomery* to the facts of petitioner's case.

(1) A person is presumed to have held a reasonable fear of imminent peril of death or great bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or great bodily harm to another if:

(a) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcefully entered, a dwelling, a residence, or occupied vehicle, or if that person had removed or was attempting to remove another against that person's will from the dwelling, residence, or occupied vehicle; and

(b) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

When immunity under section 776.032 is properly raised by a defendant, the trial court must conduct a non-jury, pre-trial hearing to determine whether the defendant is immune from criminal prosecution. *Peterson*, 983 So. 2d at 29. The court "confront[s] and weigh[s] only factual disputes", and determines "whether the defendant has shown by a preponderance of the evidence that the immunity attaches." *Id.* at 30.

Petitioner asserts that counsel's failure to raise "Stand Your Ground" immunity in a pre-trial motion to dismiss was unreasonable because "facts relating to ownership and control of the residence and questions as to which party was armed with the potential of inflicting great bodily harm clearly existed." (Doc. 6, p. 20 in

ECF).   Petitioner alleges counsel's deficiency prejudiced him because "[i]t is possible the entire trial may have been avoided."   (*Id*.).   Petitioner claims he presented his ineffective assistance claim to the state courts in his Rule 3.850 proceeding.  (*Id*., p. 7 in ECF).

Respondent asserts a procedural default defense.  Respondent argues that although petitioner presented his ineffective assistance claim in Ground Four of his amended Rule 3.850 motion, he abandoned the claim on appeal because although his initial brief argued that he was "robbed" of his "constitutional rights to due process protection of law, and competent counsel" (Ex. K, p. 6), he failed to cite any federal cases or statutes, and instead relied solely on state appellate decisions to support his claim.  (Doc. 18, pp. 8-9).  According to respondent, petitioner's "only exhausted claims in ground two present issues of state law that aren't cognizable in this proceeding."  (*Id*., p. 9).   Petitioner replies that he consistently contended throughout his Rule 3.850 proceeding that his attorney's failure to file a motion to dismiss deprived him of his constitutional right to effective assistance of counsel. (Doc. 20, pp. 1-2).  The court need not decide the procedural default issue, because even assuming to petitioner's benefit that he fairly presented his ineffective assistance of counsel claim to the state postconviction appellate court, and that the

First DCA rejected the claim on the merits, petitioner fails to meet § 2254(d)'s demanding standard.

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of trial counsel is *Strickland*'s two-pronged standard set forth above.  The court bears in mind these additional principles in applying the *Strickland* standard.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant."  *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).  "[T]he absence of evidence cannot overcome the strong presumption that

counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 571 U.S. at 23 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the

> question is not whether counsel's actions were reasonable.   The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.    Section 2254 Review of State Court's Decision

The First DCA's summary rejection of this claim warrants deference under 28

U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 100.  Where, as here, there has been one

reasoned state judgment rejecting a federal claim followed by a later unexplained

order upholding that judgment or rejecting the same claim, federal habeas courts

employ a "look through" presumption.  *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188

(2018).  The *Wilson* Court described this presumption as follows:

> We hold that the federal court should "look through" the unexplained
> decision to the last related state-court decision that does provide a
> relevant rationale.  It should then presume that the unexplained decision
> adopted the same reasoning.  But the State may rebut the presumption
> by showing that the unexplained affirmance relied or most likely did
> rely on different grounds than the lower state court's decision, such as
> alternative grounds for affirmance that were briefed or argued to the
> state supreme court or obvious in the record it reviewed.

*Id.* at 1192.  Applying *Wilson*'s "look-through" presumption, the First DCA's

rejection of petitioner's claim was not contrary to *Strickland*, did not involve an

unreasonable application of *Strickland*, and was not based on an unreasonable

determination of the facts.

The state circuit court rejected petitioner's claim by reasoning:

Defendant's Amended Motion for Postconviction Relief proceeded to an evidentiary hearing on grounds 4 and 6. Defendant was present at the evidentiary hearing with his appointed counsel, Russ Wilson, and Defendant testified in support of his claims. Mark Sims [petitioner's trial counsel] was also present to give testimony. It is noted that Mr. Sims has over twenty years of experience in criminal law, having served for 14 years as a prosecutor and over 6 years as a public defender. Mr. Sims had taken notes regarding his conversations with Defendant and had good recall of this case. Mr. Sims sent a letter to Defendant regarding his decision to reject the State's plea offer and go to trial, which Defendant signed. Mr. Sims also testified regarding his standard practice on certain issues which were not reflected in his notes. It is also noted that Defendant's credibility is questionable because he gave three different accounts of the events leading up to the victim's fatal injury. He testified in the evidentiary hearing that Mr. Sims did not explain the issues in Ground 4 and 6 to him, contrary to Mr. Sims' testimony and contrary to the letter Defendant signed before trial.

In Ground Four, Defendant claimed his counsel was ineffective for failing to request a pretrial hearing for a ruling on his Stand Your Ground defense. Defendant testified he did not know what a Stand Your Ground motion was until after trial, and if an immunity motion had been filed and denied by the Court, he would have accepted the State's 15-year plea offer if that was the best he could get. However, Mr. Sims testified that he discussed Stand Your Ground immunity with Defendant several times and explained the significant risks and likely limited benefit of this option. It was Mr. Sims' opinion that it would be a better trial strategy to present testimony and argument in support of self-defense rather than Stand Your Ground immunity. Mr. Sims correctly anticipated that the Court would deny a motion for Stand Your Ground immunity because of the number of facts in dispute, and the issue would go to the jury. Further, the Defendant had already given two different statements to investigators. If there was a hearing on the

immunity motion, Defendant would need to testify and Mr. Sims expected Defendant would give a third version of events. These inconsistencies would result in a denial of the immunity motion and enhance the State's ability to impeach Defendant with his own statements. In fact, Defendant exercised his right to testify at trial and did tell a third version of events. The jury's reaction to the inconsistencies in Defendant's three different stories was unfavorable. Mr. Sims agreed that it is very hard to defend a person when the jury believes that person is a liar. Mr. Sims testified that Defendant was satisfied with Mr. Sims' advice on this issue, and Defendant agreed not to pursue Stand Your Ground immunity. Defendant has failed to establish error and prejudice in support of Ground Four and that claim is denied.

(Ex. J-4, p. 729).

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). The court in *Consalvo* explained:

Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983). We consider questions about the credibility and demeanor of a witness to be questions of fact. *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc). And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*Id*. at 845. Petitioner has not overcome the presumption of correctness by clear and convincing evidence.

Based on the state court's findings and the evidence in the record, the state court reasonably concluded that counsel's failure to file the motion to dismiss petitioner now proposes was a strategic decision made after thorough investigation of the facts and careful, reasonable consideration of the advantages and disadvantages of moving to dismiss the charge on Stand Your Ground immunity. Although petitioner appears to believe he had nothing to lose from pursuing a motion to dismiss, he did have something to lose.  The motion had very little chance of success and created an additional source of impeachment evidence.  Trial counsel explained at the postconviction evidentiary hearing:

> Q [Petitioner's postconviction counsel Mr. Wilson].  . . . [D]id you discuss with him [petitioner] stand your ground and –
>
> A [Trial counsel Mr. Sims].  Actually, we did.  We talked about it several times.  There's one particular instance when I talked with him about stand your ground.  It was on February the 17th.  I explained to him about my reservations about actually doing the stand your ground hearing before trial because, you know, a lot of the facts were in dispute and it's been my experience, you know, when those facts are in dispute that the judge, although he is the finder of the fact of a stand your ground hearing, usually will consider it a jury question and it goes to the jury.  Plus, we have the burden and we have to put him on the stand and it's just another statement that he has that the State can use for impeachment purposes.  I explained to him that when I went to visit on February the 17th and after explaining that to him, he seemed like he was satisfied with that and we would just go ahead and present the self defense, stand your ground defense to the jury rather than to the judge.

Q.  You said he seemed like he was satisfied with that, did he –

A.  Yes.  Yes.

Q.  – make a definitive statement to you?

A.  Yes, yes.  It says, I got here in my notes that he agreed that we didn't want to give the State a preview of our case.

(Ex. J-5, pp. 741-42; *see also id.*, pp. 751-59).

Based on the record, this court cannot say that no "fairminded jurist could agree" with the state court's determination that counsel's advice, defense strategy and decision not to file a motion to dismiss based on statutory immunity fell within the wide range of reasonable professional assistance, and that petitioner failed to establish a reasonable probability of a different outcome had counsel filed the motion to dismiss.  The motion would have been denied, and petitioner would have gone to trial with the same outcome.  Petitioner is not entitled to habeas relief on Ground Two.[4]

---

[4]Even if petitioner were correct (which he is not) that he had nothing to lose by asserting immunity in a pre-trial motion, counsel is not deficient for declining to pursue a strategy on the theory that he had "nothing to lose".  *See Knowles v. Mirzayance*, 556 U.S. 111, 121-22 (2009) (holding that there is no Supreme Court precedent establishing a "nothing to lose" standard for ineffective-assistance-of-counsel claims, and that habeas relief cannot be granted under § 2254(d)(1) based on such a standard; instead, such relief may be granted only if the state court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland*).  Plainly, a habeas court will not judge counsel's performance by the "nothing to lose"

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S.

---

test, akin to an argument counsel is deficient because he declined to make a three-quarter court shot at the buzzer.

at 327).  The petitioner here cannot make the requisite showing.  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 6), challenging the judgment of conviction and sentence in *State of Florida v. Daryl Alexander Jackson*, Bay County Circuit Court Case No. 2011-CF-884, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 12th day of June, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.